## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

RICARDO COLLINS,            :
      Petitioner,          :
                          :
      v.                     :           Case No. 3:11-cv-01932 (VAB)
                          :
JOHN BRIGHTHAUPT,       :
      Respondent.       :

### RULING ON PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, Ricardo Collins, currently incarcerated at the Cheshire Correctional Institution in Cheshire, Connecticut, brings this action *pro se* for a writ of habeas corpus under 28 U.S.C. § 2254. He challenges his 2006 conviction for murder, felony murder, and robbery in the first degree. For the reasons that follow, the petition is denied.

## I.    Standard of Review

A federal district court "shall entertain an application for a writ of habeas corpus in behalf of a person in state custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was adjudicated on the merits by a state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Section 2254(d) "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted).  Thus, the standard set forth in section 2254(d) is "difficult to meet."  *Metrish v. Lancaster*, ___ U.S. ___, 133 S. Ct. 1781, 1786 (2013).

Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision. *Williams v. Taylor*, 529 U.S. 362, 365 (2000).  Thus, "circuit precedent does not constitute clearly established Federal law, as determined by the Supreme Court."  *Parker v. Matthews*, ___ U.S. ___, 132 S. Ct. 2148, 2155 (2012) (internal quotation marks and citation omitted).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A state court unreasonably applies Supreme Court case law when the court correctly identifies the governing law, but unreasonably applies that law to the facts of the case, or refuses to extend a legal principle clearly established by the Supreme Court to a new situation in which it should govern. *Davis v. Grant*, 532 F.3d 132, 140 (2d Cir. 2008), *cert. denied*, 555 U.S. 1176 (2009).  It is not enough that the state court decision is incorrect or erroneous.  Rather, the state court application of clearly established law must be objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  Thus, a state prisoner must show that the challenged court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct.  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *Id.*  In addition, the federal court's review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## II.   Procedural History

On September 15, 2005, in the Connecticut Superior Court for the Judicial District of Fairfield at Bridgeport, a state's attorney filed a substitute information charging the petitioner with one count of murder in violation of Conn. Gen. Stat. § 53a-54a, one count of felony murder in violation of Conn. Gen. Stat. § 53a-54c, and one count of robbery in the first degree in violation of Conn. Gen. Stat. § 53a-134(a)(2).[1]  Jury selection began on February 21, 2006.  On the second day of jury selection, the petitioner's attorney advised the judge that he sought to represent himself through the remainder of jury selection and at trial.  After canvassing the petitioner, the judge permitted the petitioner to represent himself, but appointed his attorney as stand-by counsel.  After two police witnesses had testified on the first day of trial, petitioner's stand-by counsel represented the petitioner for the remainder of the trial.  *See State v. Collins*, 299 Conn. 567, 604-10 (2011).

On March 21, 2006, a jury found the petitioner guilty of all three counts in the substitute information.  *See* Resp.'s Mem. Opp., App. A at 8-9.  On May 24, 2006, the judge merged the count of murder with the count of felony murder, and sentenced the petitioner to a total effective term of imprisonment of forty-five years.  *See id.* at 8.

---

[1] The substitute information followed an earlier mistrial due to a deadlocked jury.  *See* Resp.'s Mem. Opp., App. A at 7-9.

Petitioner raised three grounds on appeal to the Connecticut Appellate Court.  He claimed that: (1) the trial judge erred in admitting evidence of his involvement in a prior shooting; (2) the judge improperly instructed the jury as to the adequacy of the police investigation into the murder of the victim; and (3) the trial judge erred in concluding that he had knowingly and voluntarily waived his right to counsel.  *See State v. Collins*, 111 Conn. App. 730, 732 & n.1 (2008).

On December 23, 2008, the Connecticut Appellate Court reversed the petitioner's judgment of conviction on the ground that the probative value of evidence regarding a non-lethal shooting that had occurred several months prior to the shooting for which the petitioner was on trial was outweighed by the danger of unfair prejudice and remanded the case for a new trial. *See id.* at 744.  On January 29, 2009, the Connecticut Supreme Court granted the State's petition for certification to appeal the decision of the Connecticut Appellate Court.  *See Collins*, 290 Conn. 911 (2009).  On January 5, 2011, the Connecticut Supreme Court reversed and remanded the case to the Appellate Court with instructions to affirm the judgment of conviction.  *Collins*, 299 Conn. at 617.

## III.  <u>Factual Background</u>

The Connecticut Supreme Court determined that the jury could reasonably have found the following facts:

> The [murder] victim, Calvin Hopkins, and his former girlfriend, Quiana Staton, jointly operated a 'business' in which Staton sold marijuana and Hopkins sold crack cocaine.  At approximately 10:30 on the night of December 2, 2002, Hopkins went to Staton's Bridgeport apartment in a public housing project known as the Greens.  He came to the apartment carrying a large 'wad of cash' and retrieved an additional $500 to $600 from Staton's safe.  Staton testified that Hopkins intended to use the money to purchase additional crack cocaine. Hopkins left Staton's apartment with the money at approximately 12 a.m. on the morning of December 3, 2002.  He spoke to Staton on his cellular telephone approximately one hour later from his car in the parking lot of the apartment

complex.  During that conversation, Staton looked from her window to see Hopkins in his car talking to two unknown individuals.  Staton later attempted to call Hopkins' cellular telephone at approximately 2 a.m. and again at 3 a.m. but received no answer to either of those calls.

Later that morning, at approximately 7:15, Bridgeport police were dispatched to a scene a short distance from Staton's apartment complex where a green sedan was parked in the road preventing a school bus from passing.  Upon opening the door to the vehicle, the police discovered Hopkins 'reclined in the front seat with his head leaning back and what appeared to be a large amount of blood in the interior of the vehicle.'

At the scene, a physician from the medical examiner's office recovered a bullet shell casing from Hopkins' collar, and the currency that Hopkins had been carrying in the earlier hours of the morning was not found on his body.  Two anomalous fingerprints were found on the vehicle: the [petitioner]'s fingerprint was found on the exterior of the rear driver's side door and that of another individual, Anthony Berrios, was found on the exterior of the front passenger door.  An autopsy later revealed that Hopkins died from a gunshot wound to the head, and bullet fragments were recovered from his head.

The [petitioner] became a suspect in this case because of his involvement in the [Rose shooting] in August, 2002.  A firearms examiner testified at trial that the shell casing recovered from Hopkins' collar at the scene of the homicide was fired from the same weapon that had been used in the [Rose shooting].

The [petitioner] turned himself in to the Bridgeport police in January, 2003, for the Rose shooting. During the course of the police questioning, the [petitioner] admitted to shooting Rose [with a chrome and black nine millimeter handgun] but also indicated that he had since sold the gun. . . . While in police custody for the Rose shooting, the [petitioner] was also questioned with regard to the Hopkins homicide.  In his statement to police, the [petitioner] admitted meeting with Hopkins in his car to purchase drugs during the night of December 2, 2002, but denied killing him.

The jury reasonably could have found the following additional facts demonstrating, however, that the [petitioner] did not actually dispose of the chrome and black nine millimeter handgun that he had used in the Rose shooting and, indeed, used it to kill Hopkins in the course of robbing him.  Specifically, Ryshon Penix, the [petitioner's] cousin, also lived in the Greens housing project. When the [petitioner] visited him there on November 28, 2002, several days before Hopkins' death, both Penix and Ivan Ramos, his roommate, noticed that the [petitioner] had with him a chrome and black handgun.  Further, Kimberly Finney, who had been incarcerated with the [petitioner] at the Bridgeport correctional center, testified that the [petitioner] had confessed to him in a conversation in the dayroom there that he had murdered Hopkins while robbing

him.  Finney testified specifically that the [petitioner], while evading the police investigation of the Rose shooting, had unsuccessfully attempted to support himself by selling drugs in the Greens housing project, turned to robbery instead, and elected to rob Hopkins because the [petitioner], who had purchased drugs from Hopkins before, had seen him with a lot of money.  After arranging to meet with Hopkins, ostensibly to purchase drugs, the [petitioner] then attempted to rob Hopkins in his car, and shot him when Hopkins resisted.  The [petitioner] told Finney that he had turned himself in for the Rose shooting in an attempt to avoid being considered a suspect in the Hopkins case, figuring that "he [would] never become a suspect in the [Hopkins] case because he had been in jail already."

*Id.* at 570-74 (internal quotation marks, citations, and footnotes omitted).

## IV.   <u>Discussion</u>

Petitioner challenges his conviction on two grounds.[2]  He claims that: (1) the trial judge erred in admitting evidence of his prior involvement in the Rose shooting and (2) the judge improperly instructed the jury that the adequacy of the police investigation was not an issue in the case even though it was the main theme of his defense.

### A.   <u>Uncharged Misconduct Evidence</u>

During the State of Connecticut's case in chief, the prosecutor offered the testimony of several witnesses regarding the shooting of Stephen Rose in August 2002 by the petitioner using the same gun that had been used in the murder for which he was on trial.  The petitioner argued that the testimony was prejudicial evidence of uncharged misconduct.  The trial judge permitted the testimony over the petitioner's objection.

On appeal, the petitioner challenged the admission of the testimony.  The Appellate Court concluded that the trial judge had erred in admitting testimony about petitioner's involvement in the Rose shooting and that the error was not harmless.  *See* Collins, 111 Conn. App. at 743-44.

---

[2] In his state court appeal, the petitioner claimed that the trial court failed to canvass him sufficiently before permitting him to represent himself.  *Collins*, 299 Conn. at 602-03.  The petitioner does not assert this claim in his habeas petition.  *See* Petition at 13.  Therefore, the Court will not address it.

The Appellate Court reversed the judgment of conviction and remanded the case for a new trial.

The Connecticut Supreme Court granted the State's petition for certification.

The Connecticut Supreme Court determined the following additional facts were relevant to the claim regarding the admission of evidence of uncharged misconduct:

> After the testimony of Jessica Tillson, a Bridgeport police officer who was the state's first witness, the [petitioner], who at the time was representing himself with the aid of standby counsel . . . argued against the admissibility of Rose's testimony. The [petitioner] claimed that Rose's testimony would be "highly prejudicial to the jury and clearly outweighs the probative value. The state . . . has me testifying that I had a gun and it [has] other evidence, and I was convicted of it, and I really don't see a need for this testimony here because . . . it would inflame the jury because I'm already convicted . . . of this case . . . and I'm on trial right now for this murder case, and it's a shooting case. It's two shooting cases. And if they [were] to bring [Rose to testify], I think . . . no matter what your instruction would be to the jury, that it . . . still would be lingering in them that somebody got shot. And I would ask that you not allow it in." The prosecutor, noting that Joseph Gallagher, a Bridgeport detective, would testify about his activities in processing the crime scene of the Rose shooting at Pembroke and Jane Streets in Bridgeport, observed that Rose had testified at the probable cause hearing and stated that Marshall Robinson, the state's firearms expert, would testify "that based upon his training and experience . . . the firearm that was used in the shooting of [Rose] was, in fact, the same firearm that was used in causing the death of [Hopkins]." The prosecutor argued that the [petitioner]'s act of shooting Rose was "prior misconduct" that was admissible because Rose would testify that "the person who was in possession of this common firearm at the time of his shooting was . . . the defendant. . . ." Relying on *State v. Sharpe*, supra, 195 Conn. at 651, 491 A.2d 345, the prosecutor noted the availability of the "common limiting instruction" that "the evidence which [the jury is] about to hear is not being offered for the purpose of showing that the defendant is of bad character or anything regarding his propensity to commit crime," and argued that the defendant's actions in shooting Rose would be admissible under § 4-5(b) of the Connecticut Code of Evidence, to prove identity, identity as an element of the crime charged, and under the catchall provision "to corroborate crucial prosecution testimony." The prosecutor stated that proof of the defendant's access "to the instrumentality of the crime" would permit "the jury, through circumstantial evidence . . . to develop a chain of evidence that would tend to indicate that the defendant was responsible for this crime." The state then argued that the probative value of the evidence would outweigh its prejudicial effect, particularly given the limiting instruction, which the prosecutor noted was used successfully in the defendant's first trial.

The trial court concluded that the evidence of the Rose shooting could be admitted to prove the defendant's specific intent to commit murder, the identity of the person who shot Hopkins, and to corroborate the crucial testimony exception because "one person who . . . allegedly can tie in the defendant to . . . that gun on that date [is] Rose." The court then concluded that the prejudicial effect of the evidence did not outweigh its probative value with respect to the state's case, and noted that limiting instructions would be given prior to Gallagher and Rose's testimony.

After Gallagher testified regarding his actions at the crime scene in this case, the prosecutor shifted his focus on direct examination to the scene of the Rose shooting. After the [petitioner] noted his continuing objection, Gallagher identified five nine millimeter shell casings that he had collected from the scene of the Rose shooting.

On the second day of the [petitioner]'s cross-examination of Gallagher, prior to the start of questioning, the trial court delivered a limiting instruction to the jury advising it that, with respect to the events of August 28, 2002, the date of the Rose shooting, it could consider that testimony or evidence only for the "limited purposes . . . on the issues of intent, element of a crime or opportunity," and that the jury was "expressly prohibited from using that evidence as evidence of any bad character of the defendant, or as any evidence [of] a tendency on his part to commit criminal acts." The trial court reminded the jury of this limiting instruction several times, including after the testimony of Finney and Robinson, and during the final charge. We note that Rose never testified at this trial, and that the only evidence admitted that described the Rose shooting in any detail was the [petitioner]'s statement, which was admitted with his agreement.

*Collins*, 299 Conn. at 578-82.

The Connecticut Supreme Court disagreed with the Connecticut Appellate Court's conclusion that the admission of the uncharged misconduct testimony was improper. The court acknowledged that, under Connecticut law, prior misconduct evidence is generally inadmissible to prove that a defendant is guilty of the crime of which he is accused, but is admissible to prove intent, identity, motive, malice, knowledge, an element of the crime, a common plan or scheme, or to corroborate crucial prosecution testimony. *See id.* at 582-83.

The court then employed a two-part test to determine whether the prior misconduct testimony was relevant and material to at least one of the circumstances set forth in section 4-

5(b) of the Connecticut Code of Evidence, and whether the probative value of the prior misconduct testimony outweighed its prejudicial effect. *See id.* The court concluded that, under the first prong of the test, the testimony regarding the shooting of another person by the petitioner with the same gun used to murder Hopkins was properly admitted to prove the identity of the petitioner as the shooter of Hopkins, and to corroborate the testimony of prosecution witness Finney regarding the petitioner's confession as to the murder of Hopkins. *See id.* at 587-88, n.19.

The Connecticut Supreme Court then addressed the second prong of the uncharged misconduct admissibility test and determined that the prejudicial effect did not unduly outweigh its probative value. *See id.* at 586-92. The court found that the evidence of prior uncharged misconduct was not unduly prejudicial because it was not as severe as the conduct with which the petitioner was charged in the present case, the trial judge had made significant efforts to mitigate or reduce the prejudicial effect of the testimony and evidence of uncharged misconduct admitted at trial, and the trial judge had given limiting instructions regarding the evidence both during the testimony of witnesses and in his charge to the jury. The Supreme Court concluded that the Connecticut Appellate Court had erred in failing to defer to the trial court's effort to balance the relevancy and prejudice prongs of the uncharged misconduct admissibility test in determining whether to admit the evidence of the Rose shooting. Thus, the Connecticut Supreme Court concluded that the trial court had not erred in admitting this testimony.

The petitioner argued on direct appeal both to the Connecticut Appellate and Supreme Courts that the trial court's decision to admit the prior uncharged misconduct violated state law governing the admissibility of evidence. *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, Apps. E, G. I. The petitioner made no argument that the trial court's evidentiary decision

9

violated federal law and did not include citations to federal cases in his briefs on appeal. Furthermore, the Connecticut Appellate and Supreme Courts resolved petitioner's claims relying solely on state evidentiary law. *See Collins*, 111 Conn. App. at 741-44; *Collins*, 299 Conn. at 582-93.

A federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws. *See* 28 U.S.C. § 2254(a). Thus, federal habeas corpus relief is not available to remedy a violation of state law. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ("[F]ederal habeas corpus relief does not lie for errors of state law") (internal quotation marks and citation omitted); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts.") (emphasis in original); *see also Lisenba v. California*, 314 U.S. 219, 228 (1941) ("We do not sit to review state court action on questions of the propriety of the trial judge's action in the admission of evidence."). Consequently, a federal court's review of a habeas petition challenging a state conviction "is limited to deciding whether [the] conviction violated the Constitution, laws, or treaties of the United States" and does not include a reexamination of the determinations of a state court on state law evidentiary issues. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

The Court concludes that the petitioner's claim regarding the admission of uncharged misconduct evidence does not assert a violation of the United States Constitution or federal law. The petitioner contends in his petition that the trial court abused its discretion when it admitted evidence of his involvement in the Rose shooting because the probative value of such evidence did not outweigh the risk of prejudice. Petition at 3, 4, 9, ECF No. 1; *see also* Pet.'s Reply at 1-

2, ECF No. 14.  The petitioner is requesting federal review of an evidentiary issue that was decided on the basis of state law.  It is not the province of this Court to determine whether the evidence of the petitioner's involvement in the Rose shooting should have been admitted under Connecticut evidentiary rules and law.  *See Estelle*, 502 U.S. at 67-68; *see also Greene v. Ricks*, No. 3:07-cv-00060 (JCH), 2009 WL 1858765, at *4 (D. Conn. June 29, 2009) ("The claim that the trial court erred in admitting evidence of uncharged misconduct is a question of state law and is not cognizable in a federal habeas corpus petition.").

Because the petitioner contends only that the admission of prior misconduct testimony violated Connecticut evidentiary rules or case law, he has not asserted that he is in custody pursuant to a conviction that violates federal law or the United States Constitution.[3]  A claim that a conviction was obtained in violation of state law is not cognizable in a federal habeas petition under 28 U.S.C. § 2254(a).  The petition for writ of habeas corpus is denied as to the first ground relating to the erroneous admission of uncharged misconduct evidence.

---

[3] The petitioner does not claim that the trial court violated his due process rights under the federal Constitution by admitting the prior misconduct evidence.  *See* Petition at 9; Pet.'s Reply at 1-2.  Even if he had, such a claim would fail because he did not present it to the state courts.

A state prisoner seeking federal habeas corpus review must generally exhaust available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A).  To exhaust a federal constitutional claim in state court, a petitioner must "fairly present[]" the "substance" of the federal claim to the state appellate court.  *Smith v. Duncan*, 411 F.3d 340, 349 (2d Cir. 2005) (citation omitted).  "It is not enough that all the facts necessary to support [a] federal claim were before the state courts, or that a somewhat similar state-law claim was made."  *Id.* (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).  "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."  *Duncan v. Henry*, 513 U.S. 364, 366 (1995).

The petitioner argued on direct appeal that the trial court's decision to admit evidence of uncharged misconduct by petitioner violated state law.  The petitioner made no argument that this evidentiary decision violated federal law and did not rely upon federal law in his brief on appeal.  In addition, the state courts resolved this claim relying solely on state evidentiary law.  Therefore, the petitioner failed to exhaust any federal due process claim that he may have had, and this court would be forced to dismiss such a claim.

**B.**     <u>**Jury Instruction**</u>

Petitioner argues that the trial court improperly instructed the jury that the adequacy of

the police department's investigation of the crime was not an issue in the case even though it was

the main theme of his defense.  The petitioner contends that the trial judge's instruction violated

his right to present a defense and to a fair trial.

The Connecticut Supreme Court determined the following additional facts were relevant

to this claim:

> Prior to closing arguments, the trial court held a charge conference in chambers
> with all counsel.  The [petitioner] did not file a request to charge prior to the
> conference; the state filed a request to charge, but did not address therein the topic
> of the adequacy of the police investigation.  The record and the parties' briefs do
> not indicate whether or when the trial court provided the parties with a copy of its
> draft charge in advance of the conference.
>
> The following day, the trial court summarized on the record the proceedings at the
> charge conference, noting specifically, inter alia, that "the court will allow in final
> argument by the defendant concerning police competency in not following up on
> the fingerprint for . . . Berrios; that it's limited to competency and not to be used
> in any way, shape or form for third party culpability.  To make that more
> concrete, the court in reviewing the information with the jurors will indicate that
> there was no evidence of another participant in this crime."  Neither the
> prosecutor nor the [petitioner] had any further comment or objected to the trial
> court's summary of the charge conference.
>
> In his closing argument, the [petitioner], inter alia, challenged the adequacy of the
> police investigation.  In response, the state argued that, although the [petitioner]
> had claimed that "the cops botched" this investigation, there was no evidence that
> it was inadequate.  Thereafter, the trial court charged the jury: "Now, you have
> heard in the course of arguments by counsel discussion as to whether the police
> conducted a thorough investigation.  You have also heard some discussion about
> the competency of the police in this arrest.  Ladies and gentlemen, this question
> might be a matter of opinion, but the state has put its evidence before you and the
> [petitioner] was entitled to make an investigation and put his evidence before you
> also.  And, of course, not only the state but also the defense has put on evidence
> on behalf of the [petitioner].
>
> "*I say to you, ladies and gentlemen, that the ultimate issue before you is not the
> thoroughness of the investigation or the competence of the police.  The ultimate
> issue you have to . . . determine is whether the state in the light of all the evidence*

>  *before you has proved beyond a reasonable doubt that the [petitioner] is guilty on*
>  *one or more of the counts for which he is charged.*"   (Emphasis added.)   The
>  [petitioner] did not take any exceptions to this instruction at trial.

*Collins*, 299 Conn. at 594-55.

A fundamental component of the criminal justice system and a requirement of due process is the standard of proof beyond a reasonable doubt as to every element of a charged offense.  *See Victor v. Nebraska*, 511 U.S. 1, 5 (1994).  Jury instructions violate federal due process if they "fail[] to give effect to [the] requirement" that the prosecution must prove every element of a charged offense beyond a reasonable doubt.  *Middleton v. McNeil*, 541 U.S. 433, 437 (2004).

The Supreme Court has held that the Sixth and Fourteenth Amendments guarantee a criminal defendant "a meaningful opportunity to present a complete defense."  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal quotation marks and citations omitted).  The right to present a defense includes "[t]he rights to confront and cross-examine witnesses and to call witnesses in one's own behalf[.]"  *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973).  A criminal defendant does not, however, have "an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."  *Taylor v. Illinois*, 484 U.S. 400, 410 (1988).  Furthermore, the Constitution permits trial court judges "to exclude evidence that is repetitive . . . , only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues."  *Crane*, 476 U.S. at 689-90 (internal quotation marks and citation omitted).

On appeal, counsel for the petitioner stated that the central theme of the petitioner's defense was that the witness testimony offered by the prosecutor was not credible and the police had done an inadequate job of investigating the murder of the victim.  *See* Resp.'s Mem. Opp'n

Pet. Writ Habeas Corpus, Apps. E, G, I.  Counsel did not contend that the trial judge prevented him from offering testimony or evidence at trial or in his closing argument in support of his defense.  Rather, he argued that the trial judge's instruction regarding the issue of the police investigation into the murder of the victim undermined the petitioner's defense by suggesting that the jury not consider it and also conveyed an impression that the defense was not worthy of consideration.  *See Collins*, 299 Conn. at 598.

The adequacy of a state jury charge is generally a question of state law and is not reviewable in a federal habeas corpus action, absent a showing that the charge deprived the defendant of a federal constitutional right.  *See Cupp v. Naughten*, 414 U.S. 141, 146 (1973). The burden of proof on a state prisoner regarding a claim of improper jury instruction is substantial:

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal.  The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process[,]" not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned.'"

*Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp*, 414 U.S. at 146-47).

The Supreme Court has held that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."  *Cupp*, 414 U.S. at 146-47.

The Connecticut Supreme Court's statement of the law with regard to a defendant's right to establish a defense and to proper jury instructions, although taken from state cases, is consistent with Supreme Court precedent.  *See Collins*, 299 Conn. at 598-99.  Because the court applied the correct legal principles, the statement is not contrary to federal law.  *See Early v.*

14

*Packer*, 537 U.S. 3, 8 (2002) (holding that state court need not be aware of nor cite relevant Supreme Court cases, as long as the reasoning and decision do not contradict the applicable law). Thus, the Court considers whether the analysis of the Connecticut Supreme Court was an unreasonable application of Supreme Court law.  *See* 28 U.S.C. § 2254(d)(1).

The Connecticut Supreme Court considered the challenged portion of the jury instructions in the context of the entire charge.  The court determined that the trial court's instruction, that the ultimate issue to be decided was not the competence of the police and its investigation but rather whether the state proved that the petitioner committed the charged crimes, did not preclude the jury from considering the adequacy of the police investigation in connection with the strength of the prosecution's case and the petitioner's defense.  The judge did not instruct the jury that it could not consider the adequacy of the police investigation, but rather reminded the jury that its ultimate job was to determine whether the prosecutor had proven the elements of the charged offenses beyond a reasonable doubt in view of all the evidence that had been admitted at trial.  *See Collins*, 209 Conn. at 599-601.  The Connecticut Supreme Court also observed that trial judge had not referred to the petitioner's evidence in a disparaging manner and had not emphasized or endorsed the state's arguments or evidence.  *See id.* at 602.

The Connecticut Supreme Court properly considered the instruction regarding the adequacy of the police investigation in the context in which it was made and in view of the entire jury charge.  The court concluded that the instruction had not misled the jury and had not prevented the petitioner from presenting his defense.  Petitioner, through stand-by counsel, had a full opportunity to cross-examine the police witnesses as well as other state witnesses and to address in his closing argument the credibility of the decisions by police officers not to investigate other possible perpetrators of the crime, test blood evidence, or further search the car

in which the victim was found.  Furthermore, the instruction did not impermissibly malign the petitioner's evidence or defense.  Nor did it champion the state's evidence or alleviate the state's burden of proving all elements of the charged offenses beyond a reasonable doubt.  The Connecticut Supreme Court reasonably determined that the trial was not rendered fundamentally unfair by the instruction on the adequacy of the police investigation.  The decision of the Connecticut Supreme Court did not constitute an unreasonable application of clearly established federal law.  Accordingly, the petition for writ of habeas corpus is denied on this ground.

**V.**     **Conclusion**

The Petition for Writ of Habeas Corpus [**ECF No. 1**] is **DENIED**.  The Clerk is directed to enter judgment in favor of the respondent and close this case.

The Court concludes that petitioner has not shown that he was denied a constitutionally or federally protected right.  Thus, any appeal from this order would not be taken in good faith and a certificate of appealability will not issue.

SO ORDERED this fifth day of January 2016, at Bridgeport, Connecticut.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE